### John F. Devine, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

#### Gen. No. 15,155.

VERDICTS—*when set aside as against the evidence with finding of facts.* A verdict will be set aside as against the evidence and reversed with a finding of facts where the decided preponderance of the evidence is against the verdict of the jury and establishes that the defendant was not guilty of the negligence charged in the declaration.

Devine v. Chicago City Railway Co., 159 Ill. App. 420.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of fact. Opinion filed January 6, 1911.

**Statement by the Court.** This appeal is prosecuted by the defendant to reverse a judgment for $3,000 entered in an action brought by the administrator of Millard M. McKeehan, deceased, for alleged negligence which caused the death of McKeehan.

The declaration consists of two counts, in each of which the negligence averred is that the defendant carelessly and negligently permitted the air brakes on the car which struck plaintiff's intestate to become and to remain out of order and in bad condition and repair, so that when the air was applied by the motorman of the defendant the brakes would not work and would not stop defendant's car; and that the defendant had notice, or in the exercise of reasonable care would have known and discovered the defective condition of the brakes.

The only controverted question of fact in the case on the trial was the condition of the air brakes on the car which struck and killed McKeehan.

McKeehan, plaintiff's intestate, was the conductor of defendant's car No. 2300, which left Washington street, Chicago, on its south-bound journey along Clark street at about 7:30 on the evening of February 15, 1904. The intersection of Clark and Twelfth streets is elevated twenty-five or thirty feet in order to permit the trains of the Rock Island and Lake Shore railroads to pass under the Twelfth street viaduct. The grade of Clark street begins to rise at about Taylor street and reaches its highest point at Twelfth street, and after crossing Twelfth street, it gradually descends to the level of the street, which is reached between 13th and 14th streets.

On the evening in question, after McKeehan's car had passed 12th street and was about at the foot of the

southern decline therefrom, the trolley left the wire and in consequence thereof the lights in the car were extinguished, leaving it in darkness. McKeehan attempted to adjust the trolley to the wire from the rear platform of his car, but without success. He then stepped to the ground, and while trying to adjust the trolley he observed the following car, No. 2732, coming down the decline. He thereupon endeavored to attract the attention of the motorman so as to prevent a collision by standing between the rails of the track on which it was approaching several feet to the rear of his own car and swinging his arms as a signal to stop. He not only failed to attract the attention of Bucher, the motorman, but he remained so long on the track that he was struck by the approaching car and fatally injured.

It appears that car 2732 was one of the large double truck type of cars. It reached 12th street on its southern run, and after starting down the incline was brought to a stop and held in place at the top of the incline by the application of the air brakes. It was started again without turning on the current, by simply releasing the brakes, and no stop was made thereafter until the collision occurred, when it had attained a speed, according to the witnesses, of from six to twelve miles an hour.

At the close of the plaintiff's evidence, and again at the completion of all the evidence, the defendant tendered a peremptory instruction to find the defendant not guilty. The court in each instance refused the instruction.

CALHOUN, LYFORD & SHEEAN, for appellant.

DAVID K. TONE, H. M. ASHTON and AYRES & AYRES, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

In the view we take of this case, it is only necessary

Devine v. Chicago City Railway Co., 159 Ill. App. 420.

for us to consider whether the negligence averred in the declaration is proved by the evidence in the record.

But one witness was called by the plaintiff whose testimony tended in any manner to show any defect of any nature in the brakes of car 2732. This witness was Bucher, the motorman on car 2732. His testimony is that he left the car barn at 77th street and Vincennes avenue at 4:30 o'clock in the afternoon in question and ran the car until the accident happened. He stated that the first three stops he made with the car were bad, the third stop being a little bad, "not what you would call real bad. I made the fourth stop fine. I can't remember the fifth stop; I can't remember every stop you know, that is impossible." He then assumes to give an average of good and bad stops of three to one, or, he says, "it might have worked half and half; I got two bad stops in succession, and I would get two good stops in succession." Concerning the conditions just before the accident, he says that he came to a full stop at the top of the incline at 12th street, and that as the car stood there at 12th street the mere releasing of the brakes caused it to start; that the brakes were powerful enough at 12th street to stop and hold the car on the incline in a position of rest, and that when he released the brakes the car simply coasted down the incline, starting off at the rate of a mile an hour and attaining a speed at the bottom of the incline of about six or eight miles an hour. He says he did not see anything until he got nearly to 14th street, when he saw some object of some description, when he was between eighty and a hundred feet from it. He then applied his brakes, but could not get any pressure from them, and threw them off and used the reverse power. The witness admits that with the car moving it was difficult to judge the distance of the car from the object in front of him when he first saw the object.

Bearing upon the value of this witness' testimony as proof of what it tends to prove, it was shown that

on the night in question he filled out a form report, in which he stated that he "Didn't see car 2300 until about 35 feet from it." And in the report following the printed question: "Was the brake in good order?" there appeared the word "Yes." With reference to this report Bucher admitted that every written part of the report except the word "yes" was in his handwriting and was in the identical condition that it was in when made by him on the night of the accident, but stated that the word "yes" was not in his handwriting, although it was a good imitation of his writing. A well known expert on handwriting testified from a microscopic examination of the document that the word "yes" was written by the same person who wrote the remainder of the report, and that there had been no erasure under the word "yes."

Furthermore, it appears that on the day following the accident Bucher appeared before the coroner's jury and signed a statement, which the deputy coroner swears was read to Bucher before he signed it, containing the following: "I saw nothing in my way until I saw an object of some description going northeast towards my car on the south-bound track. I did not see the object again until I hit said car 2300, which shattered the windows and knocked the stove down. * * * I first saw the car when about 35 feet away from him. I had reversed my car when I first saw the object, and when I saw the car I applied sand and turned the controller four notches. The night was dark and I could see about 25 feet ahead of me. * * * My brakes were in good condition."

The shorthand reporter who took the questions and answers of Bucher while he was testifying at the coroner's inquest, which formed the basis of the narrative form of statement above quoted, testified that the following questions were put to Bucher and the following answers were given by him:

"Q. The first you saw of the car was when you were about 35 feet from him? A. Yes, sir. * * *

A JUROR: Q. Was your brake in good order?
A. Yes, sir.''

The testimony also shows that in an interview between the witness and the attorney who tried the case for the defendant, less than a week before the trial, Bucher said that he tried the brakes of the car before leaving the barn and that they worked all right, and that he testified before the coroner that the brakes were in good condition; that he so answered the coroner's juror who put the question above quoted at the inquest, and his answer was true. The witness further said in that interview that from the time he first saw the man, as the car was coasting down the incline, he could not stop the car, with the heavy load of passengers it had, with the brakes, no matter what their condition was, and that he did not make use of the brakes, but used the sand and the reverse, as he had testified before the coroner because he thought the reverse would make the quickest stop.

Bucher offered no explanation of his statements to the attorney of defendant differing so materially and radically from his testimony delivered a few days later on the trial of the case. He undertook, however, to explain why he committed perjury at the coroner's inquest by saying that when he reported to the office of the defendant on the morning following the accident, a man who subsequently took him to the inquest looked over his report and told him it did not appear to be very favorable to him, and that he had got to make himself good with the Company in order to keep working, and say that the brakes were in order, and that if he did not he would put two car repairers on the stand to testify against him at the inquest. The man Hayes, with whom he claimed this conversation was had, made a categorical denial of it, and the plaintiff's witness Voll, who was present at the time of the conversation, according to the testimony of Bucher, denied that he went into any private office with Bucher, but on the contrary stated that all the witnesses remained in the general office.

Upon consideration of the contradictory and irreconcilable statements of this witness, we are of the opinion that his testimony has little, if any, value as proof in the case standing by itself. When the testimony of Rosengard and Schettler, car inspectors for the defendant, who inspected the brakes before the car left the barn, and Davis, the chief car inspector, who inspected and tried the car on the tracks after the accident by running the car nearly two blocks, putting the air on the brakes and throwing it off, again and again, and backed the car up, and started and stopped it a dozen times, observing the air pressure and that it ran down to 60 and then jumped up to 80, which were the limits within which the pressure is kept automatically by a generator, and that he found nothing wrong with the air brakes; also the evidence of Voll, the conductor, who testified that in all the stops of the car in its two trips from the time it left the barn at 4:30 up to the time of the accident, and the testimony of Halstead and Quilly, and Storey, we think that the decisive preponderance of the evidence is strongly against the verdict of the jury, and that the defendant is not guilty of the negligence averred in the declaration.

The judgment is accordingly reversed with a finding of fact.

*Reversed with finding.*